## Hogan vs. Cushing and others, imp.

*March 31 — April 20, 1880.*

*(1) Lien upon logs.  (2) Court and jury.*

1. The "labor and services" for which ch. 95 of 1877 gives a lien upon logs, are not merely the personal or manual labor and services of the claimant, but include those performed by his teams and servants.
2. There is no error in refusing to submit a question of fact to the jury when there is a mere *scintilla* of evidence to establish the fact, and overwhelming evidence against it.

APPEAL from the Circuit Court for *Chippewa* County.

In this case there was a personal judgment against the defendant Patrick O'Neill, for $768.73, and it was further adjudged that plaintiff had a lien for that amount upon certain logs and timber described in the complaint. *Cushing and others*, co-defendants of O'Neill, appealed from the latter part of the judgment.

For the appellants there was a brief by *Jenkins & Boland*, and oral argument by *Mr. Jenkins*.

*Arthur Gough*, for the respondent.

ORTON, J. This action is brought to enforce the statutory lien provided by chapter 95, Laws of 1877, upon the logs of the appellants, for the labor and services of the respondent, by his teams and servants, in putting them into the Chippewa river. It is in proof that the respondent himself, personally and manually, did but little of such work, and that it was done mainly by his teams and servants; and it is contended that for such services by others in the work, and in using the teams, although by the employment and for the use of the respondent, the statute does not confer a lien upon the logs for his benefit.

This cannot be the construction of our statute, whatever may be the construction of similar statutes of other states, of different language, as in Maine, where the statute expressly limits the lien to *personal* services. There are in our statute no such restrictive words; and the language "labor and services" should be construed as broadly as its common use will warrant, which would include such labor and services when performed by servants and agents, as well as personally, as in the common count in *assumpsit* for work and labor. The lien, being given as well to any "company or corporation," must necessarily include labor and services not personally and manually performed. That the labor in this case was performed for the contractor with the owners of the logs, or his subcon-

tractor, is no objection to the lien claimed. *Munger v. Lenroot*, 32 Wis., 541.

The respondent and O'Neill, who employed him to do the work, both testify that they were not jointly interested in this particular work, as partners or otherwise. The only evidence of such copartnership is the testimony of one Michael Maloney, that he "asked the [respondent] if he was partner of Pat. O'Neill in the contract, and he said he was, but not in writing." This conversation or admission is emphatically denied by the respondent, and all of the undisputed facts in relation to the manner in which the work was done, and the mutual dealings and accounts between him and O'Neill in respect to it, clearly show that they were not in fact partners in this particular part of the work. That they were or were not partners is a conclusion of law to be drawn from the facts; and where the facts themselves, as in this case, show that no partnership existed, the admission of one of the parties, in a casual conversation, of such a mere general conclusion, would weigh but little, even if undisputed. If the admission was actually made, it might well be, and it is quite probable, that the language "partner of Pat. O'Neill" in the work was used in the sense that they were both interested in the general work, and not in the sense that they were jointly interested in this particular part of the work. This meaning is rendered very probable by the additional words used, "but it was all the same; he was going to bind *Cushing* yet." *Cushing* was the original contractor for the whole work.

Was it error, in view of all the evidence upon the subject, not to submit the question of partnership to the jury? We think that if the question had been specially submitted, and the jury had found from this admission alone, so contradicted and disproved, that the respondent and O'Neill were partners in this particular work, from the overwhelming evidence to the contrary this court would not hesitate to reverse such a finding. This being the test, we must hold that there was not sufficient

contradictory evidence upon this question to require its submission to the jury. If this admission can be called evidence at all, it is very slight, a mere *scintilla*, and should have worked no change in the result of the trial; and we think the learned judge before whom the cause was tried was warranted in disregarding it.

The amount of the verdict was the smallest amount claimed, and was clearly supported by the evidence.

*By the Court.*— The judgment of the circuit court is affirmed, with costs.